Waller v. Lasher.

---

## James B. Waller et al.

### v.

## Charles W. Lasher.

*Trespass—Party Wall—License to Strengthen—Damages—Independent Contractor—Evidence—Instructions.*

1.  The rule as to independent contractors can never be invoked to relieve a party from a liability he has himself by contract assumed.

2. Notwithstanding the existence of a party wall agreement calling for payment of one half the value of such wall in case of its use by an adjoining proprietor, no liability will arise for damages necessarily occasioned by the strengthening thereof with the consent of its owner.

[Opinion filed February 10, 1891.]

APPEAL from the Superior Court of Cook County; the Hon. ELLIOTT ANTHONY, Judge, presiding.

Messrs. OSBORNE BROS. & BURGETT, for appellants.

Now, it is well settled law, that "That to which a person assents is not esteemed an injury." *Volenti non fit injuria.* Broom's Legal Maxims, 8th Ed. 267. In Gould v. Oliver, 33 E. C. L. 635, 638, Tindall, Ch. J., says: "It is a general rule of the English law that no one can maintain an action for a wrong where he has consented to the act which occasions his loss." See the defense of "license" in text books on trespass. In Harris v. Liggett, 1 W. & S. (Pa.) 301, 306, Gibson, Ch. J., says: "The terms of a contract are private laws, which the parties prescribe for themselves, to fix the measure of their duties and liabilities." Broom (Legal Maxims, 8th Ed. 690) says *Modus et conventio vincunt legem*—the form of agreement and convention of parties overrule the law—may be regarded as the most elementary principle relative to contracts. Broom quotes Erle, Ch. J., as saying: "Parties to contracts are to be allowed to regulate their rights and liabilities themselves, and the courts will only give effect to the intention of the parties as it is expressed by the contract."

In Rowbotham v. Wilson, 92 E. C. L. 123, 150, Martin, B., quotes the maxim—*Cuicunque aliquid conceditur, conceditur etiam et id sine quo res ipsa non esse potuit,* and says: "It seems to me, therefore, that if a man grant the mines under his land, and if, as stated in the present case, a subsidence of the surface takes place, notwithstanding the utmost skill is exercised in the working of the mines, the grantor must submit to the inconvenience and loss consequent upon the subsidence, and has not a right of action against the grantee (by reason of such subsidence). The grantor can not derogate from his grant." On appeal in same case, Lord Wensleydale

quotes and applies the maxim: *Quando aliquid conceditur, conceditur etiam et id sine quo res ipsa non esse potuit.* 9 H. L. Cases, 348, 360.

Lasher's counsel concede that he gave Waller leave and license to put in new underpinning, as was done. And the right to put in such new underpinning involves and includes the right to disturb Lasher's enjoyment of his premises, and to enter upon his property for the purpose and to the extent necessary to exercise the principal right of putting in the new underpinning for which Lasher gave leave and license. Lasher knew as well as Waller the risk to which he (Lasher) would be exposed by the probable settling of the wall, and Lasher must be regarded as having voluntarily assumed such risk when he expressly gave leave and license to put in the new underpinning. It stands to reason that at most, the Wallers are only responsible for every exaggeration of the necessary damages to Lasher, which, by any diligence on their part or on the part of the workmen, could have been prevented; that the Wallers were only bound this far—to reduce to a minimum the injury that would result to Lasher by reason of the doing of the work, for the doing of which he had given leave and license. This is as far as it is just and reasonable to hold the Wallers. To go further would nullify the express leave and license given by Lasher, and deprive it of all effect. It is shown that the Wallers were solicitous to get from Lasher, before they began their building, the leave and license of Lasher for the doing of the work. They might not have been willing to expose themselves to suit by the doing of the work, but for the leave and license given by Lasher. He ought not now be permitted to derogate from his leave and license.

In none of the cases cited in Lasher's brief had the plaintiff given to defendant express leave and license to do the work producing the damage complained of.

Hughes v. Percival, L. R. 8 H. L. App. Cases 443, 446, 447, 455, holds that the defendants were not under duty absolutely to provide that no damage should come to the plaintiff from the use he made of the party-wall; that they were simply under duty to see that skill and care were exercised in

those operations which involved a use of the party-wall
exposing it to risk. Lasher's counsel, however, concede, and
the evidence admitted shows, that there was no want of skill
or care in the doing of the work under the express leave and
license of Lasher, from which resulted the damage com-
plained of.

All that was decided in any of the cases cited by Lasher's
counsel is that the mere employment of contractors would not
relieve the Wallers from responsibility for their acts; that
the Wallers were insurers against the negligence of the con-
tractors. All that such cases hold is that the mere employ-
ment of contractors is not, of itself, a defense; and that if the
contractors are guilty of negligence, then such negligence is
that of the defendant in such case.

But in the present case it is strenuously contended by
Lasher's counsel that the evidence shows that the contractors
were not guilty of negligence (and the admitted evidence so
shows); and that the sinking of the wall would have resulted
no matter with what skill or care the work was done; that a
wall underpinned anew must necessarily, from that very fact,
settle.

There having been no want of care in the underpinning of
the wall—the settling not having resulted from negligence in
the doing of the work, the judgment below must be reversed.

In Standard Bank v. Stokes, L. R. 9 Ch. Div. 68, it was
held that one owner of a party-wall, where the Metropolitan
Building Act did not apply, had a right to lower the founda-
tion so as to give him a sub-basement.

Matthews v. Dixey, 149 Mass. 595, and Everett v. Edwards,
149 Mass. 585, are important cases upon the rights of owners
of party-walls.

Messrs. EVERETT & EVERETT, for appellee.

WATERMAN, J.    James B. Waller and Charles W. Lasher
were the owners of adjacent lots in Chicago. Lasher has
upon his south lot a brick dwelling which did not extend
either to the front or rear of his lot. Lasher owned not only
a lot south of Waller, but also one north and adjacent to

Waller's; so that Waller's lot was between the two owned by Lasher.

The north wall of Lasher's house was a party-well; the party-wall agreement provided that Waller might join to and use the same, as well above as below the surface of the ground, and contained the following condition:

" Provided, always, nevertheless, and on this express condition, that the said party of the first part (Waller), his heirs, etc., before proceeding to join any building to the said partition wall, and before making any use thereof, or breaking into the same, shall pay or secure to be paid unto the said party of the second part, his assigns, etc., the full moiety or one-half value of said party-wall, or so much thereof as shall be joined to or used as aforesaid."

Waller, desiring to build upon his lot, testifies that he went to Lasher and explained to him that he was going to put up a heavier building than Lasher's, and that if he joined onto the wall it would damage both buildings; that in order to avoid this, it would be necessary for him, Waller, to underpin the wall and put in a deeper and heavier foundation; that Lasher consented to this, and to the going on of the work, and that thereupon he, Waller, proceeded with the work.

Lasher denies that he ever gave such consent. Lasher brought suit against the Wallers for damages caused by the settling of his house in consequence, as alleged, of the cutting into the wall by them.

The court instructed the jury that if the defendants built a dwelling adjoining to the party-wall, and for the purpose of building the same, cut into and made use of the party-wall, and cut into and removed the foundations of the party-wall, and joined to and used the party-wall as alleged in the plaintiff's declaration, and all in such a manner that the wall settled, thereby injuring the dwelling of plaintiff as alleged in the declaration, then the plaintiff was entitled to recover such damages as the jury should believe from the evidence the plaintiff had sustained.

The defendants had pleaded leave and license to do what they did; they did not deny cutting into the wall, removing

its foundations or joining to it; they only denied that any damage had resulted therefrom.

This instruction left the jury nothing to consider save the matter of damages.

It is, to be sure, the case that under the party-wall agreement, Waller was not authorized to make use of the party-wall until he had paid, or secured to be paid to Lesher, one-half the value of such wall; but the defendants had pleaded a license to do what they did, and given evidence tending to sustain such plea; that is, the defendants claimed that not only had prepayment been waived, but that if the party-wall agreement did not authorize all that was done, the subsequent license was a consent to the underpinning, removing of foundations, etc., and a waiver of the matter of prepayment.

If such license was given, then for damage that *necessarily* resulted therefrom, appellants would not be liable, as, under the party-wall agreement, if prepayment had been made, it is undisputed there would have been a right to cut into and join to such wall; and thereupon, for damage that *necessarily* resulted from such cutting or joining, a plea of the agreement would have been sufficient answer.

Inasmuch as the first instruction entirely ignores the question of whether there was a license, and also makes no distinction between damage necessarily resulting from acts the work permitted, and damage which would not have happened had the work been done with proper care, it was erroneous.

The defendants set up that the work was not done by them but by independent contractors, to whom they gave the entire charge and control, not only of the work itself, but of the premises. We do not think this sufficient.

The defendants were sued as trespassers for doing that which they had no right to do. Surely it can be no answer to a charge of trespass upon real property to say, "I did not do this thing. I was never near the premises, having some work to be done which necessitated an entry upon and breaking of the close of my neighbor. I contracted with responsible parties to so break and enter, giving to them full control and possession over my premises and the work to be done."

The maxim " *Qui facit per alium facit per se*," is directly applicable to the defendants' contention.

Even if the defendants acted under a license, the doctrine of independent contractors is not applicable.

If a license to do the work was given, it was conditioned upon an implied agreement upon the part of Waller that the work should at least be done in a skillful and careful manner, so as to avoid the doing of damage ; the implied contract was not that Waller would let the work out to independent contractors under an agreement that they should do it with proper care.　He can not thus shift to the shoulders of another the burden of his undertaking.

Nor is it sufficient to show that the work Lotz and Thompson contracted with Waller to do, would, if done with reasonable care, have resulted in no damage to Lasher.

At the very least, Waller's undertaking was that whatever work he had licensed to do, should be done with reasonable care; not that he would only authorize the doing of work, which, if done with reasonable care, would result in no damage.　Hughes v. Percival, 8 L. R. App. Cases, 443.

The rule as to "independent contractors" can never be invoked to relieve a party from a liability he has himself, by a contract, assumed.　Shearman & Redfield on Negligence, Sec. 176.

For the error mentioned the judgment must be reversed and the cause remanded.　　　　*Reversed and remanded.*